

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

ENTERED
01/11/2019

| | | |
|---|---|---|
| IN RE: | § | |
| **JOSE MARCOS MONTALVO,** | § | **CASE NO: 16-70186** |
| Debtor | § | |
| | § | **CHAPTER 11** |
| | § | |
| _____ | § | |
| **JOSE MARCOS MONTALVO,** | § | |
| **Individually and MARCOS** | § | |
| **MONTALVO d/b/a/ MONTALVO** | § | |
| **ROOFING & CONSTRUCTION,** | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 16-7010** |
| | § | |
| **ADOLFO VELA, Individually and** | § | **Judge Eduardo V. Rodriguez** |
| **ADOFLO VELA d/b/a ADELCO** | § | |
| **ENTERPISES, and TCPSP** | § | |
| **Corporation,** | § | |
| Defendants | § | |

**MEMORANDUM OPINION**
*Resolving ECF Nos. 175, 184, and 185*

## I. INTRODUCTION

Pending before this Court is Jose Marcos Montalvo's ("*Montalvo*") Fourth Amended Complaint ("*Amended Complaint*"), along with counterclaims by Adolfo Vela and Adolfo Vela d/b/a Adelco Enterprises ("*Vela*") and TCPSP Corporation ("*TCPSP*"). This Court conducted trial over several days. After having considered Montalvo's Amended Complaint, counterclaims filed by Vela and TCPSP, and applicable law, this Court now issues its memorandum opinion.

## II. FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, which incorporates Fed. R. Civ. P. 52. Any finding of fact more properly considered a conclusion of law, or any conclusion of law more properly considered a finding of

fact, should be so considered.   This case, with its long and tortured history, boils down to a simple contractual dispute between Montalvo, Vela, and Vela's attorney Harold Kenneth Tummel ("*Tummel*") of the law firm Tummel & Casso ("*T&C*"), that resulted in several lawsuits over the span of about 10 years.   After filing for bankruptcy, Montalvo initiated this Adversary Proceeding[1].   A point of contention in this case is the pre-petition execution sale of Montalvo's properties ("*Properties*") in order to satisfy a state-court judgment obtained by Vela.   What follows is a summary of those Properties.

### A.  Montalvo's Pertinent Acquisitions of Real Property

     i.    Fresno Subdivision, Pharr, Texas.

Montalvo acquired his interest in Lot 5, Block 102 of the Fresno Subdivision ("*Fresno*") in Pharr, Texas, on June 7, 1999.  Pl.'s Ex. 5.  The deed describes Fresno as:

> Lot Number Five (5), in Block Number One Hundred Two (102), of the Fresno Subscription in the City of Pharr, Hidlgo [sic] County, Texas.

*Id.*

     ii.    1311 E. Helmer St., Pharr, Texas.

Montalvo acquired his interest by deed in 1311 East Helmer Street ("*Helmer*") in Pharr, Texas, in 2001.  Rec. 1/16/2018 9:06:58.  He built a house on the property in 2001 and began living there.  Rec.  1/16/2018 9:08:51.  The Helmer Property is described as:

> LOT 80, ABBEY HEIGHTS SUBDIVISIONS, AN ADDITION TO THE CITY OF PHARR, HIDALGO COUNTY, TEXAS AS PER MAP OR PLAT THEREOF RECORDED IN VOLUME 21, PAGE 181, MAP RECORDS, HIDALGO COUNTY, TEXAS.

Pl.'s Ex. 17.

---

[1] Citations to the docket in this adversary proceeding styled *Jose Marcos Montalvo, Individually and Marcos Montalvo d/b/a Montalvo Roofing & Construction vs. Adolfo Vela, Individually and Adolfo Vela d/b/a Adelco Enterprises, and TCPSP Corporation*, 16-7010 (the "*Adversary Proceeding*"), shall take the form "ECF No. ——," while citations to Montalvo's Bankruptcy, 16-70186 (the "*Bankruptcy Case*"), shall take the form "Bankr. ECF No. ——."

iii.    Mixon Subdivision, Donna, Texas

Montalvo acquired his interest by deed in Lots 21 & 22 of the Mixon subdivision ("*Mixon*") in Donna, Texas, on December 17, 2002, following a tax sale of the Property.  Pl.'s Ex. 1.  The deed describes Mixon as:

> LOTS 21 AND 22, MIXON SUBDIVISION TO THE CITY OF DONNA, AS DESCRIBED IN VOLUME 1343, PAGE 828, DEED RECORDS OF HIDALGO COUNTY, TEXAS.

*Id.*

iv.    505 W. Anderson Rd., Donna, Texas

Montalvo acquired his interest by deed in 505 West Anderson Road ("*505 Anderson*") in Donna, Texas, on June 5, 2002, by assuming a note made by Juan Robles Ortega, payable to Kyle Bennett, Individually and as Trustee of the Kyle Bennett Living Trust ("*Kyle Bennet Trust*"), and secured by a vendor's lien and deed of trust on the Property.  Pl.'s Ex. 3.  The June 5, 2002 deed describes 505 Anderson as:

> Being 5.742 acres of land out of Lot 24 and Lot 25, Hill Halbert Subdivision, Hidalgo County, Texas, according to map thereof recorded in Volume 1, Page 35, Map Records in the Office of the County Clerk of Hidalgo County, Texas; being more particularly described by metes and bounds in Tract 2 Exhibit A attached hereto and made a part of this instrument and described by the survey plat in Exhibit B attached hereto and made a part of this instrument.

*Id.*  The metes and bounds description attached to the June 5, 2002 deed is described as:

DESCRIPTION OF 5.742 ACRES OF LAND
OUT OF LOTS 24 AND 25, HILL HALBERT TRACI'
HIDALGO COUNTY, TEXAS.

Being 5.742 acres of land situated in Hidalgo County, Texas, and being out of Lots 24 and 25, Hill Halbert Tract as per map recorded in Volume I, Page 35 of the Hidalgo County Map Records, and said 5.742 acre tract being more particularly described by metes and bounds as follows, to-wit:

BEGINNING at a nail set on the north line of said Lot 24 for the northeast corner of said tract herein described, said nail bears North 89*36' East, 148.00 feet from the northwest

corner of said Lot 25;

THENCE, South 00*24' East, with a line that is parallel to the west line of said Lot 24, at a distance of 30.00 feet pass a 1/2-inch iron rod set for reference on the apparent south right of way line of Anderson Road, at a distance of 1300.00 feet past a 1/2-inch iron rod set for reference on the apparent north right of way line of an irrigation canal and continuing for a total distance of 1320.00 feet to a point for the southeast corner of said tract herein described;

THENCE, South 89*36' West, 189.50 feet, with the south line of said Lot 24 to a point for the southwest corner of said tract herein described;

THENCE, North 00*24' West, at a distance of 20.00 feet pass a 1/2-inch iron rod set for reference on the apparent north right of way line of an irrigation canal, at a distance of 1290.00 feet pass a 1/2-inch iron rod set for reference on the apparent south right of way line of said Anderson Road and continuing for a total distance of 1320.00 feet to a nail set for the northwest corner of said tract herein described;

THENCE, North 89*36' East, 189.50 feet, with the north line of said Lots 24 and 25 and with the centerline of said Anderson Road to the POINT OF BEGINNING and containing 5.742 acres of land more or less.

*Id.* at Bates No. 0013.

     v.    Lot 13, Sing's Subdivision, Pharr, Texas

Montalvo acquired his interest in Lot 13, Sing's Subdivision ("*Sing's*") in Pharr, Texas, on April 7, 2004.  Pl.'s Ex. 6.  The deed describes Sing's as:

LOT 13, SING'S SUBDIVISION, AN ADDITION TO THE CITY OF PHARR, HIDALGO COUNTY, TEXAS AS PER MAP OR PLAT THEREOF RECORDED IN VOLUME 29, PAGE 52, MAP RECORDS, HIDALGO COUNTY, TEXAS.

*Id.*

     vi.    Lot 49, Villas Estates, Mission, Texas

Montalvo acquired his interest in Lot 49, Villas Estates Subdivision ("*Villas Estates*") in Mission, Texas, on November 27, 2006.  Pl.'s Ex. 9.  The deed describes Villas Estates as:

LOT FORTY-NINE (49), VILLAS ESTATES SUBDIVISION, AN ADDITON [sic] TO THE CITY OF MISSION, HIDALGO COUNTY, TEXAS AS PER MAP OR PLAT THEREOF RECORDED IN VOLUME 44, PAGE 16, MAP RECORDS, HIDALGO COUNTY, TEXAS.

*Id.*

  vii. Lot 11, Block 2, East Donna Subdivision, Donna, Texas

Montalvo acquired his interest in Lot 11, Block 2, in the East Donna Subdivision ("*East Donna*") in Donna, Texas, on April 30, 2008.  Pl.'s Ex. 10.  The deed describes East Donna as:

> LOT ELEVEN (11), BLOCK 2, EAST DONNA SUBDIVISION, CITY OF DONNA, HIDALGO COUNTY, TEXAS AS PER MAP OR PLAT THEREOF RECORDED IN VOLUME 24, PAGE 173B, MAP RECORDS, HIDALGO COUNTY, TEXAS.

*Id.*

  viii. 501 W. Anderson Rd., Donna, Texas

Montalvo acquired his interest in 501 West Anderson Road ("*501 Anderson*") in Donna, Texas, on January 25, 2011.  Pl.'s Ex. 2.  The January 25, 2011 deed describes 501 Anderson as:

> Being a 5.742 acres of land situated in Hidalgo County, Texas and being out of lot 25, Hill Halbert Tract, Hidalgo County, Texas as per map or plat therefore recorded in volume 1, Page 35, Map record in the office of the county clerk of Hidalgo County, Texas: reference t [sic] which is here made for all purposes, and being more particularly described by metes and bounds as follows, to-wit.

> BEGINNING at a nail set on the north line of said lot 25, for the northeast corner of said tract herein described, said nail bears 89 degrees, 36 minutes 41.50 feet from the Northeast corner of said lot 25,

> THENCE, South 00 degrees, 24 minutes east, with a line that is parallel to the east lien [sic] of lot 25, at a distance of 30.00 feet pass a ½ inch iron rod set for reference on the apparent south right of way line of Anderson Road, at a distance of 1300.00 ft. pass a ½ inch iron rod set for reference on the apparent North right of way line of an irrigation canal and continuing for a total distance of 1320.00 feet to a point for the southeast corner of said tract herein described.

> THENCE, South 89 degrees, 36 minutes West, 288.50 ft. with the south line of said Lot 25 to a point for the southwest corner of said tract herein described.

*Id.*

## B.  Homestead

On August 21, 2008, Montalvo submitted an affidavit to the Official Records of Hidalgo

County claiming Helmer as his homestead.  Defs.' Ex. 113.  Three years later, on May 31, 2011, Montalvo filed an application with the Hidalgo County Appraisal District ("*Appraisal Office*") seeking to add 501 Anderson to his homestead.  Defs.' Ex. 75.  Rolando Garza, the Chief Appraiser for Hidalgo County, testified that his office notified Montalvo by letter dated July 21, 2011 that the May 31, 2011 application was denied because Helmer was listed as Montalvo's homestead.  Rec. 1/22/2018 9:21:25.  Two years later, Montalvo filed a second application, this time seeking homestead exemption for 505 Anderson.  Defs.' Ex. 132.  Montalvo represented in his second application that he was the owner of 505 Anderson.  *Id.*  On May 7, 2013, the Hidalgo County Appraisal District approved Montalvo's application retroactively to 2012.  Defs.' Ex. 133, 135.  More than four years later, Rolando Garza informed Tummel via letter on April 4, 2017 that the Appraisal Office mistakenly exempted 505 Anderson, and would cancel the exemption.  Defs.' Ex. 114.

### C.  Contract Dispute

i.     The Initial Suit ("C-095")

On August 20, 2007, Montalvo sent a proposal to Vela to perform labor on the roof of the project for the Edinburg police department.  Defs.' Ex. 8, at Ex. B.  On January 13, 2009, Vela filed suit against Montalvo, Case No. C-095-09-E ("*C-095*"), in the 275th Judicial District Court of Hidalgo County ("*275th District Court*"), asserting that Montalvo materially breached the subcontract with Vela, causing damages.  Defs.' Ex. 1.  Montalvo filed an answer to Vela's suit on March 2, 2009, generally denying the material allegations.  Defs.' Ex. 2.  A year later, Vela filed his motion for summary judgment.  Defs.' Ex. 20.  Montalvo failed to respond to the motion for summary judgment.  *Id.*  On August 6, 2010, the 275th District Court rendered judgment against Montalvo for $21,967 plus pre-judgment interest and attorney fees, totaling

$31,667.  Defs.' Ex. 3.  Montalvo did not appeal the judgment.  Defs.' Ex. 20.  A month later, on September 7, 2010, Tummel prepared an "Abstract of Judgment" bearing the C-095 case number, and filed it in the 275th District Court.  Defs.' Ex. 76.

### D.  Execution of the Judgment in C-095

   i.    First Writ of Execution & Sale

On March 1, 2012, and again on March 14, 2012, the Hidalgo County Clerk issued a writ of execution to the Hidalgo County Sheriff's Office ("*HCSO*"), commanding them to seize Montalvo's Property in order to satisfy the C-095 judgment.  Pl.'s Ex. 34, 37.  Two weeks later, HCSO gave notice of a levy of real property, providing that 501 Anderson, East Donna, Villa Estates, and Sing's would be sold on May 1, 2012 at the door of Hidalgo County courthouse in the City of Edinburg, Texas ("*Edinburg*"), and that notice by publication would run for three consecutive weeks immediately preceding the sale in the Edinburg Review ("*Newspaper*"), a publication in Hidalgo County.  Pl.'s Ex. 39.  Linda Medrano, the Regional Director of the Newspaper, stated via affidavit that the Newspaper ran the notice of the first writ of execution sale on the fourth, eleventh, and eighteenth of April 2012.  Defs.' Ex. 42.  On May 1, 2012, HCSO struck off the four Properties for sale and executed deeds conveying 501 Anderson, East Donna, Villas Estates, and Sing's to TCPSP, a corporation owned by the profit-sharing plan for T&C's employees, for $650 each.  Pl.'s Ex. 46, 47, 48, 49.  TCPSP made four checks payable to HCSO, each in the amount of $650, for a total of $2,600.  Defs.' Exs. 43, 44.  Of that $2,600, HCSO disbursed $70 to itself for levy fees, and the remaining $2,530 to T&C to be disbursed to Vela.  Defs.' Ex. 45.

   ii.    Second Writ of Execution & Sale

A month after the first sale, on June 20, 2012, HCSO issued a second writ of execution,

reflecting that $30,425.00 of the C-095 judgment remained unpaid.  Defs.' Ex. 51.  HCSO followed this up by giving notice of a levy of real property, providing that 505 Anderson, Mixon, and Fresno would be sold on September 4, 2012 at the door of the Hidalgo County courthouse in Edinburg, and that notice by publication would run in the Newspaper for three consecutive weeks immediately preceding the sale.  Pl.'s Ex. 39.  The Newspaper's advertising invoice reflects that the second notice of sale ran in the Newspaper on the twenty-fifth of July, first, and eighth of August 2012.  Defs.' Ex. 31.  On September 4, 2012, HCSO struck off the three Properties and executed deeds conveying 505 Anderson, Mixon, and Fresno to TCPSP for $575 each.  Defs.' Ex. 35, 36, 37.  TCPSP made three checks payable to HCSO, each in the amount of $575, for a total of $1,725.  Defs.' Ex. 48.  Of that $1,725, HCSO disbursed $180 to itself for levy fees, and the remaining $1,545 to T&C to be disbursed to Vela.  Defs.' Ex. 45.

### E.  Bill of Review Proceeding

On August 22, 2012, approximately two years after the entry of the C-095 judgment, Montalvo petitioned for bill of review, Cause No. C-2559-12-E, ("*C-2559*"), in the 275th District Court, challenging the C-095 summary judgment.  Defs.' Ex. 4.  TCPSP was not a named party to the bill of review proceeding.  *Id.*

Vela filed an answer to C-2559 on October 24, 2012, amending it on December 26, 2012.  Defs.' Ex. 5, 6.  On December 5, 2013, the 275th District Court entered a final judgment that Montalvo take nothing on his claims against Vela.  Defs.' Ex. 7.  The judgment taxed court costs against Montalvo.  Defs.' Exs. 7.  Montalvo subsequently filed a notice of appeal on January 3, 2014.  Defs.' Ex. 21.  The Texas Court of Appeals for the Thirteenth District affirmed the judgment by opinion entered on January 14, 2016, Defs.' Ex. 19, with the court's mandate issued on February 29, 2016.  Defs.' Ex. 21.

### F.  Notices of Lis Pendens and Related Litigation

On September 3, 2013, TCPSP filed suit against Montalvo, Case No. C-5565-13-D ("*C-5565*"), in the 206th Judicial District Court of Hidalgo County ("*206th District Court*"), asking the court to void three notice of lis pendens filed by Montalvo.  Defs.' Ex. 91.  In filing the notice of lis pendens, Montalvo referenced the pending C-2559 suit.  Defs.' Ex. 71, 72, 73.  One month later, Montalvo filed an answer, generally denying the material allegations of the petition.  Defs.' Ex. 92.  The 206th District Court entered judgment on September 17, 2014, finding the notices of lis pendens to be void and taxing costs of court against Montalvo.  Defs.' Ex. 93.

### G.  Commencement of the C-7344 Petition in State Court

Five days after the C-2559 judgment, on December 10, 2013, Montalvo filed suit against Vela, Cause No. C-7344-13-B ("*C-7344*"), in the 93d Judicial District Court of Hidalgo County.  Defs.' Ex. 8.  Montalvo asserted causes of action for, *inter alia*: (1) fraud by misrepresentation and nondisclosure; (2) promissory estoppel; (3) breach of fiduciary duty; (4) negligent misrepresentation; (5) malicious prosecution; (6) conversion; (7) intentional infliction of emotional distress; (8) suit to quiet title; and (9) abuse of process.  *Id.*  Vela filed his original answer in C-7344 on December 10, 2013.  Defs.' Ex. 9.

On December 31, 2014, Montalvo added TCPSP as a defendant, Defs.' Ex, 10, asserting the same allegations against TCPSP as Montalvo asserted against Vela.  Defs.' Ex. 11.

### H.  The Instant Chapter 11 Case and Proofs of Claim

On April 27, 2016, Montalvo filed for relief under Title 11 Chapter 11 of the United States Bankruptcy Code.  Bankr. ECF No. 1.  TCPSP shortly thereafter filed two proofs of claim.  Claim Nos. 1-1, 3-2.  In Claim No. 1-1, TCPSP asserts an unsecured claim for $362.00 in court costs awarded in C-5565.  Claim No. 1-1.  Montalvo has not objected to this claim.  In Claim No.

3-2, TCPSP asserts an unsecured claim in the amount of $4,289.95 for unpaid principal and interest in a note acquired by TCPSP and which has been contested by Montalvo.  Claim No. 3-2.

Montalvo's objection to Claim No. 3-2 asserts that (1) there were sufficient irregularities that contributed to the inadequate sale price involved with the execution sale that shocks the conscience; (2) Tummel colluded with the lien-holder and was transferred the rights to the alleged debts that were allegedly owed by Montalvo, and as such is improper; (3) the amount claimed is not supported by documents; (4) the amount claimed is not authorized by law; (5) the interest claimed is not authorized by law; (6) no payment history has been provided which shows that TCPSP is entitled to the amounts claimed; and (7)  the claimed debt is based on the improper sale of homesteaded Property.  ECF No. 175.

Vela has filed two proofs of claim.  In Claim No. 15-1, Vela asserts an unsecured claim for $2,431.29 plus $0.33 in interest accruing per diem from December 5, 2015, awarded in the C-2559 judgment.  Claim No. 15-1.  Montalvo has not objected to this claim.  In Claim No. 2-2, Vela asserts a secured claim in the amount of $39,966.15 plus $5.33 interest per day after February 26, 2016, awarded in the C-095 judgment.  Claim No. 2-2.  Montalvo's objections to Vela's Claim No. 2-2 are: (1) there were sufficient irregularities that contributed to the inadequate sale price involved with the execution sale that shocks the conscience; and (2) the claimed debt is based on the improper sale of homestead Property.  ECF No. 175.

## I.  The Adversary Proceeding and Counterclaims

Montalvo removed C-7344 to this Court on June 7, 2016, now the instant Adversary Proceeding.  Defs.' Ex. 22 at Bates No. 00239.  Montalvo's Amended Complaint asserts: (1) objections to TCPSP's Claim No. 3-2; (2) objections to Vela's Claim No. 2-2; (3) Conversion; (4)

Declaratory Judgment Suit to Quiet Title; (5) Wrongful Execution; and (6) Unjust Enrichment. ECF No. 175.

TCPSP counterclaims for: (i) the balance due and unpaid under the terms of the C-5565 judgment and unpaid post-judgment interest pursuant to TEX. FIN. CODE ("*TFC*") Sections 304.003-304.007; (ii) $9,739.89 pursuant to the terms of the note and deed of trust that TCPSP acquired from Box Family Limited Partnership, L.P. ("*Box*"), including reasonable attorneys' fees and costs of collection; (iii) rents collected from tenants occupying Properties sold at the execution sales without TCPSP's consent and exemplary damages pursuant to TCPRC Chapter 41; (iv) reasonable attorneys' fees and case expenses pursuant to the TEX. R. CIV. P. ("*TRCP*") 13 and the TEX. CIV. PRAC. & REMEDIES CODE ("*TCPRC*") Chapter 10; and (v) reasonable attorneys' fees and case expenses pursuant to FED. R. CIV. P. ("*FRCP*") 11 and TCPRC, Chapter 10. ECF No. 184.

Vela counterclaims for (i) the balance due and unpaid under the terms of the C-095 judgment unpaid post-judgment interest pursuant to TFC Sections 304.003-304.007; (ii) the balance due and unpaid under the terms of the C-2559 judgment, together with due and unpaid post-judgment interest, pursuant to TFC Sections 304.003-304.007; (iii) reasonable attorneys' fees and case expenses, pursuant to TRCP 13 and TCPRC, Chapter 10; and (iv) reasonable attorneys' fees and case expenses pursuant to FRCP 11 and TCPRC, Chapter 10. ECF No. 185.

This Court, after conducting a five day trial over December 19, 2017, January 16, 2018, January 17, 2018, January 22, 2018, and January 23, 2018, took the matter under advisement and further ordered the Parties to file amended findings of fact and conclusions of law based on the evidence and testimony provided at trial. Plaintiff and Defendants filed their findings of fact and conclusions of law thereafter. *See* ECF Nos. 268, 274.

### III. CONCLUSIONS OF LAW

1.  **Jurisdiction, Venue, and This Court's Constitutional Authority to Enter a Final Order**

    This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its jurisdiction in accordance with *In re: Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012). Furthermore, these are core matters under § 157(b)(2), and this Court holds the constitutional authority under *Stern v. Marshall*, 564 U.S. 462 (2011) to issue a final order. However, to the extent these are non-core matters, parties may consent to jurisdiction of this Court on non-core matters to enter a final order. *Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015). And in this Adversary Proceeding, Plaintiff filed his notice of consent on June 7, 2016, ECF No. 1, and Defendants filed their notice of consent on June 14, 2017. ECF No. 184, 185. Therefore, even if the matters before this Court are non-core matters, all parties have consented and this Court holds constitutional authority to enter a final order and judgment. Finally, venue is governed by 28 U.S.C. §§ 1408, 1409. Here, venue is proper because the Court presides over the underlying Bankruptcy Case. *See* Bankr. ECF No. 1.

2.  **Plaintiff's Counts III-VI Are Barred by the Rooker-Feldman Doctrine**

    The Rooker-Feldman doctrine establishes a limit on federal jurisdiction under the basic theory that only the United States Supreme Court has jurisdiction to review a state court decision. *Land and Bay Gauging, LLC v. Shor*, 623 F. App'x. 674, 678 (5th Cir. 2015). In other words, Rooker-Feldman provides that federal courts lack subject-matter jurisdiction to review, modify, or nullify state court final orders . *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000). This applies when claims, even though not directly passed upon by the state court, are inextricably intertwined with the state court's judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 286, 125 S. Ct. 1517, 1523, 161 L. Ed. 2d 454 (2005).

Rooker-Feldman applies in the limited circumstances of cases that were (1) brought by state-court losers (2) complaining of injuries caused by state-court judgments (3) rendered before the district court proceedings commenced and (4) inviting district court review and rejection of those judgments. *Exxon Mobil Corp.*, 544 U.S. at 284. *Land and Bay Gauging, LLC*, 623 F. App'x. at 679. Concerning "injuries caused by state court judgments," the Fifth Circuit explained that the hallmark of a Rooker-Feldman inquiry is the source of the federal plaintiff's alleged injury. *Id.* If a federal plaintiff asserts a legal wrong that was allegedly the result of an erroneous decision by the state court, then Rooker-Feldman bars subject-matter jurisdiction in federal district court. *Id.* Further, whenever a court determines that it lacks subject-matter jurisdiction, the court must *sua sponte* dismiss the action. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999). Because the allegations and pleadings surrounding this case contained factual inconsistencies, this Court determined that a trial was essential to develop the testimony of the witnesses and claims. Described *infra*, Plaintiff's counts III-VI are barred by Rooker-Feldman and dismissed for lack of subject-matter jurisdiction, because the instant Adversary Proceeding was (1) brought by Montalvo who lost C-095; (2) Montalvo is complaining of injuries caused by C-095; (3) C-095 was rendered before the instant Adversary Proceeding commenced; and (4) Montalvo is inviting this Court to review and reject C-095. *See Exxon Mobil Corp.*, 544 U.S. at 284.

Elements one and three are easily met. Judgment was granted against Montalvo in C-095 on August 6, 2010. Defs.' Ex. 3. Montalvo brought this Adversary Proceeding on June 7, 2016. ECF No. 1. Elements two and four require further discussion. In count III, Plaintiff alleges that the parties "unlawfully and without authority assumed dominion and control of Montalvo's title to the [P]roperties." ECF No. 175. In count IV, Montalvo seeks a declaration that he is the "true

and lawful owner of the real [P]roperties." *Id.*  In count V, Montalvo challenges the "legality and propriety of the [HCSO] sale." *Id.*  Finally, in count VI, Montalvo claims that TCPSP was unjustly enriched in purchasing the Properties at the execution sales, and seeks turnover back to Vela, and to the extent any Property sold at the execution sales was homestead, back to Montalvo. *Id.*

Element two is met.  In all four counts, the timing of the alleged injuries originated after Defendants took possession of the Property. *See Land and Bay Gauging, LLC*, 623 F. App'x. at 679 (determining Rooker-Feldman applicability is typically the timing of the injury).  The timing of Montalvo's claims indicates that the judgment itself was the source of his alleged injuries. *See id.* (determining that the source of the injuries stemmed from a party taking possession of property pursuant to a court order).  Here, Defendants bought Montalvo's Properties through a valid execution sale pursuant to the C-095 judgment.  Defs'. Ex. 30.  Montalvo subsequently brought suit seeking a return of those Properties.  ECF No. 175.  But-for the purchase of the Properties at the execution sale, Montalvo would not have brought these claims against Defendants.  As such, C-095 was the source of Montalvo's alleged injuries. *See Land and Bay Gauging, LLC*, 623 F. App'x. at 679.    Thus, element two is met.

Element four is also met.  Montalvo's request for relief asks this Court to sign over the titles and any corresponding rights in the Properties to Montalvo.  ECF No. 175; *see Barbato v. U.S. Bank Nat'l Ass'n*, No. 14-CV-2233, 2016 WL 158588, at *3 (S.D.N.Y. Jan. 12, 2016) (reviewing the requested relief to determine whether party is seeking a review and rejection of the state court judgment).  In other words, Montalvo asks for this Court to find that Defendants should not own the Properties pursuant to the execution sale, which would effectively invalidate the C-095 judgment.  Each of Montalvo's claims—conversion, declaratory judgment suit to quiet

title, wrongful execution, unjust enrichment—would require this Court "to review the state proceedings and determine that the [] judgment was in error." *Barbato v. U.S. Bank Nat'l Ass'n*, No. 14-CV-2233, 2016 WL 158588, at *3; *see also Land and Bay Gauging, LLC v. Shor*, 623 F. App'x. 674 (5th Cir. 2015) (finding conversion and wrongful execution barred by Rooker-Feldman); *Ness v. Gurstel Chargo, P.A.*, 933. F. Supp. 2d 1156 (D. Minn. Mar. 21, 2013) (finding unjust enrichment barred by Rooker-Feldman); *Quick v. EduCap, Inc.*, 318 F. Supp. 3d. 121 (D.D.C. July 12, 2018) (finding unjust enrichment barred by Rooker-Feldman).  Because Montalvo's request for relief seeks to undo the execution sale of his Properties, Montalvo is inviting this Court to review, modify, and reject the state court judgment against him.  *See Barbato*, 2016 WL 158588, at *3.  As such, element four is met, and Counts III-VI are dismissed for lack of subject-matter jurisdiction under the Rooker-Feldman doctrine.

### 3.  In Counts I-II, Plaintiff has Failed to Carry his Burden of Proof in his Objections to the Proofs of Claim

In Counts I and II, Montalvo objects to TCPSP's Claim No. 3-2 and Vela's Claim No. 2-2, respectively.  ECF No. 175.  A proof of claim held by a creditor is allowed unless a party in interest objects.  11 U.S.C. §§ 501(a), 502(a).  If the claim is based on a writing, the original or duplicate of such writing must be filed with the proof of claim.  FED. R. BANKR. P. 3001(c).  If the proof of claim is filed in accordance with the bankruptcy rules, it will "constitute *prima facie* evidence of the validity and amount of the claim," unless a party in interest objects.  FED. R. BANKR. P. 3001(f) (emphasis added); *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988).  The objecting party must then produce evidence rebutting the claim or else the claimant will prevail.  *In re Fidelity Holding Co., Ltd.*, 837 F.2d at 698.  If evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to "prove the validity of the claim by a preponderance of the evidence."  *Id.*  The Fifth Circuit has held that the burden

of proof always rests with the claimant.  *Id.*

a)  Count I – Objection to TCPSP's Claim No. 3-2

TCPSP asserts a general unsecured claim against Montalvo in the amount of $4,289.95 for unpaid principal and interest regarding 505 Anderson.  Claim No. 3-2.  Montalvo objects to Claim No. 3-2 asserting that: (1) there were sufficient irregularities that contributed to the inadequate sale price involved with the execution sale that shocks the conscience; (2) Tummel colluded with the lien-holder and was transferred the rights to the alleged debts that were allegedly owed by Montalvo; (3) the amount claimed is not supported by documents; (4) the amount claimed is not authorized by law; (5) the interest claimed is not authorized by law; (6) no payments history has been provided, which shows that TCPSP is entitled to the amounts claimed; and (7) the claimed debt is based on the improper sale of homestead Property.  ECF No. 175.  Taken together, however, Montalvo failed to provide sufficient evidence to rebut the validity of TCPSP"s claim.

Although Montalvo's first objection alleges irregularities with the execution process that contributed to the inadequate sale price, he failed to point to any specific evidence demonstrating the irregularities he complains of.  In Texas, the sale of real property under an execution of judgment must take place between 10 a.m. and 4 p.m. on the first Tuesday of a month.  TCPRC §34.041.  The public sale of real property under the execution of judgment normally takes place at the county courthouse in the county in which the land is located.  *Id.*  The time and place real property under execution shall be advertised by notice once a week for three consecutive weeks. TRCP 647.  Technical irregularities in a sheriff's sale, standing alone, will not warrant the setting aside of a sheriff's sale unless the sale results in a grossly inadequate price.  *Apex Financial Corp. v. Brown*, 7 S.W.3d 820, 827 (Tex. App.—Texarkana 1999, no pet.).  The party attacking

the sale must plead and prove any irregularities that rendered the sale invalid. *In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. Oct. 1, 2001). Evidence showing that a better price would have resulted if the sale was conducted in a different manner is required. *Id.* For example, irregularities may be found when a trustee conspires with a potential buyer to secure the lowest bid for that buyer, or a mortgagee takes actions that chill the bidding in an attempt to secure the lowest price for itself. *See id.*

Pursuant to the C-095 judgment, the Hidalgo County Clerk issued an abstract of judgment on April 23, 2012, Defs.' Ex. 20, with HCSO issuing the first writ of execution on March 14, 2012. Pl.'s Ex. 34, 37. Notice was provided in the Edinburg Review for three consecutive weeks before the first sale. Defs.' Ex. 42; TRCP 647 (time and place of real estate under execution shall be advertised by notice once a week for three consecutive weeks). On May 1, 2012, HCSO struck off four Properties for sale and executed deeds conveying them to TCPSP for $650 each. Pl.'s Ex. 46, 47, 48, 49. TCPSP made four $650 checks payable to HCSO, totaling $2,600. Defs.' Exs. 43, 44. Of that $2,600, HCSO disbursed $70 to itself for levy fees and the remaining $2,530 to T&C to be disbursed to Vela. Defs.' Ex. 45.

On June 20, 2012, HCSO issued a writ of execution reflecting that $30,425 of the C-095 judgment remained unpaid. Defs.' Ex. 51. On July 19, 2012, HCSO properly issued notice of a levy on the rest of Montalvo's Properties—save for Helmer, his homestead—to be sold on September 4, 2012, at the Hidalgo County Courthouse. Pl's. Ex. 39. Notice was again provided for three consecutive weeks in the Edinburg Review. Defs.' Ex. 31. On September 4, 2012, HCSO struck off three Properties and executed deeds conveying them to TCPSP for $575 each. Defs.' Ex. 35, 36, 37. TCPSP made three $575 checks payable to HCSO, totaling $1,725. Defs.' Ex. 48. Of that $1,725, HCSO disbursed $180 to itself for levy fees and the remaining $1,545 to

T&C to be disbursed to Vela.  Defs.' Ex. 45.  Montalvo failed to point to any specific evidence indicating irregularities with the execution sales, and thus did not establish a causal connection between the irregularity of the sales and the inadequacy of the selling price.  As such, his first objection to Claim No. 3-2 fails.

While Montalvo's second objection alleges Tummel colluded with the lien-holder by transferring the rights to the alleged debts owed by Montalvo, he failed to point to any specific evidence showing that the assumption of the debt owed was improper or obtained thru collusion. The recital of an assumption of a debt or lien in a deed of conveyance is contractual in nature, and is governed by the terms and conditions of  the original note.  *Schultz v. Weaver*, 780 S.W.2d 323, 325 (Tex. App.—Austin 1989, no pet.).  Collusion is defined as "an agreement between two or more persons to defraud another."  *Clack v. Wollschlager*, No. 11-12-00269-CV, 2014 WL 2109384, at *7 (Tex. App.—Eastland 2014, no pet.) (mem. op.).  Montalvo acquired his interest in 505 Anderson by assuming a note made by Juan Robles Ortega payable to the Kyle Bennett Trust on June 5, 2002.  Claim No. 3-2.  *Id.*  On August 26, 2009, the Kyle Bennett Trust transferred the 505 Anderson lien to Box.  Defs.' Ex. 100.  Four years later, on July 31, 2013, Box transferred the 505 Anderson lien to TCPSP, with the transfer of lien indicating that the unpaid principal and interest  was $2,877.09.  *Id.*  A declaration was signed stating that TCPSP paid the $2,877.09 to Box in order to assume the lien and debt.  Claim No. 3-2.  The evidence shows that Box contractually transferred the lien and the outstanding principal and interest to TCPSP.  Defs.' Ex. 100.  Montalvo failed to point to any evidence which proved that the assumption of the lien and debt owed was improper, or that TCPSP and Box formed an agreement to defraud Montalvo.  As such his second objection to Claim No. 3-2 fails.

Montalvo's third objection alleges that the amount claimed is not supported by the

documents, but failed to point to any specific evidence supporting his objection. TCPSP's general unsecured claim is in the amount of $4,289.95. Claim No. 3-2. The original real estate note provided for interest at the maximum rate allowed by law. Claim No. 3-2. The highest rate authorized by law for consumer loans is 18%. TEX. FIN. CODE ANN. § 303.009; *see also All Seasons Window and Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 498-99 (Tex. App.—Texarkana 2005, no pet.). The 18% rate ceiling is applicable to written contracts through Section 303.002. *See* TEX. FIN. CODE ANN. § 303.002 (parties to a written agreement may agree to an interest rate that does not exceed the weekly ceiling). On July 31, 2013, Box transferred the 505 Anderson lien to TCPSP, indicating that the unpaid principal and interest balance was $2,877.09. Defs.' Ex. 100. Harold Tummel, legal counsel for TCPSP, signed a declaration stating that as of July 31, 2013, Montalvo did not pay the last two remaining annual payments of $1,666.95, and that the interest on the 2014 and 2015 installments to the date of Montalvo's bankruptcy case filing totaled $614.90 and $341.15, respectively. Claim No. 3-2. The total amount due under the lien is $4,289.95. Montalvo failed to point to any evidence which proved that the amount claimed is not supported by the documents on file with the proof of claim. As such, his third objection to Claim No. 3-2 fails.

Montalvo's fourth objection alleges that the amount claimed is not authorized by law, but failed to point to any specific evidence supporting his objection. The recital of an assumption of a debt or lien in a deed of conveyance is contractual in nature, and is governed by the terms and conditions of the original note. *Schultz v. Weaver*, 780 S.W.2d 323, 325 (Tex. App.—Austin 1989, no pet.). Stated *supra*, the terms of the note and supporting documents demonstrate that Montalvo has failed to pay the remaining two annual payments and interest with regard to 505 Anderson. Claim No. 3-2. The terms of the original note state that the interest rate was to be set

at the maximum allowed by law, which is 18%.  Claim No. 3-2; *see* TEX. FIN. CODE ANN. §
303.009.  Thus Montalvo failed to point to any evidence which proved that the amount of
$4,289.95 is not authorized by law.

Montalvo's fifth objection failed to point to any specific evidence supporting his
contention that the interest claimed is not authorized by law.  Stated *supra*, the terms of the
original note state that the interest rate was to be set at the maximum allowed by law, which is
18%.  Claim No. 3-2; *see* TEX. FIN. CODE ANN. § 303.009.  Montalvo failed to point to any
evidence which proved that the interest claimed is not authorized by law.

Montalvo alleges in his sixth objection that TCPSP is not entitled to the amounts claimed,
but failed to point to any evidence supporting his objection.  Stated *supra*, on July 31, 2013, Box
transferred the 505 Anderson lien to TCPSP, with the transfer of lien indicating that the unpaid
principal and interest was $2,877.09.  *Id.*  A declaration was signed stating that TCPSP paid the
$2,877.09 to Box in order to assume the lien and debt.  Claim No. 3-2.  At trial, the evidence
demonstrated that Box contractually transferred the lien and the outstanding principal and
interest balance to TCPSP.  Montalvo failed to point to any evidence which proved that TCPSP
is not entitled to the amounts claimed.

Lastly, Montalvo's seventh objection alleges that the claimed debt was based on the
improper sale of homestead, but failed to point to any evidence supporting his objection.  In
Texas, a homestead is exempt from seizure for the claims of creditors except for encumbrances
properly fixed on homestead property.  TEX. PROP. CODE ANN. § 41.001; *see also* TEX. CONST.
ART. XVI, §50 (the homestead of a family, or of a single adult person, shall be, and is hereby
protected from forced sale, for the payment of all debts . . .).  To designate property as a
homestead, a person must make the designation in an instrument that is signed and

acknowledged in the manner required for the recording of other instruments. TEX. PROP. CODE ANN. § 41.005. The person then must file the homestead designation with the county clerk in which the property is located. *Id.* The designation must contain a sufficient description of the property; a statement by the person who executed the instrument that the property is designated as homestead of the person's family or as the homestead of a single adult person not otherwise entitled to a homestead; the name of the current record title holder of the property; and a designation of the number of acres for a rural homestead. *Id.*

On August 21, 2008, Montalvo submitted an affidavit to the Official Records of Hidalgo County claiming Helmer as his homestead. Defs.' Ex. 113. Three years later Montalvo filed another application with the Appraisal Office seeking to add 501 Anderson to his homestead. Defs.' Ex. 75. Rolando Garza, the Chief Appraiser for Hidalgo County testified that his office notified Montalvo by letter on July 21, 2011 that Montalvo's 501 Anderson application was denied because Helmer was already listed as his homestead. Rec. 1/22/2018 9:21:25. Two years later, on May 7, 2013, Montalvo filed a second application seeking homestead exemption for 505 Anderson. Defs.' Ex. 132. Notably, Montalvo attempted to designate 505 Anderson as his homestead after it was sold at the C-095 execution sale. *See* Defs.' Ex. 37 (HCSO deed striking off 505 Anderson to TCPSP on October 18, 2012). Subsequently, the Hidalgo County chief property appraiser approved Montalvo's second homestead application for 505 Anderson. Defs.' Ex. 133. More than four years later, Rolando Garza informed Tummel via letter on April 4, 2017 that the Appraisal Office mistakenly exempted 505 Anderson, and would cancel the exemption. Defs.' Ex. 114.

This Court finds no improper sale of a homestead because at the time of the two execution sales, Helmer was designated as Montalvo's homestead and was not one of the

Properties sold at an execution sale.  *See* Defs.' Exs. 35, 36, 37, 43, 44.  In sum, Montalvo has failed to produce evidence rebutting TCPSP's Claim No. 3-2.  Therefore, Montalvo's objection to Claim No. 3-2 is overruled, and TCPSP's general unsecured Claim No. 3-2 is allowed in the amount of $4,289.95.

    b)  Count II – Objection to Vela's Claim No. 2-2

  In Claim No. 2-2, Vela asserts a secured claim in the amount of $39,966.15 plus $5.33 interest per day after February 26, 2016.  Claim No. 2-2.  The source of the claim comes from the C-095 judgment rendered against Montalvo in favor of Vela, discounting the execution sale proceeds.  *Id.*  Montalvo objects to Vela's claim asserting that: (1) there were sufficient irregularities that contributed to the inadequate sale price involved with the execution sale that shocks the conscience; and (2) the claimed debt is based on the improper sale of homestead Property.  ECF No. 175.  Once more, Montalvo failed to present any evidence at trial that rebuts the validity of Vela's claim.  Montalvo's homestead was not sold during the execution sales, nor were there any deficiencies in the execution sale process.  *See supra*.  Therefore, Montalvo's objection to Claim No. 2-2 is overruled, and Vela's secured Claim No. 2-2 is allowed in the amount of $39,966.15 plus 5% interest per annum accruing since February 26, 2016, until paid.

  **4.  TCPSP's Counterclaims and Damages**

  TCPSP asserts that Montalvo is liable for: (1) the balance due and unpaid under the terms of the C-5565 judgment along with post-judgment interest pursuant to TFC Sections 304.003-304.007; (2) $9,739.89 plus costs of collection, including reasonable attorneys' fees pursuant to the loan assumption by TCPSP; (3) rents collected from tenants occupying Properties sold at the execution sales without TCPSP's consent and exemplary damages pursuant to TCPRC Chapter 41; (4) reasonable attorneys' fees and case expenses on account of Montalvo's C-7344 suit

pursuant to TRCP 13 and TCPRC Chapter 10; and (5) reasonable attorneys' fees and expenses on account of the Adversary Proceeding pursuant to FRCP 11 and TCPRC Chapter 10.  ECF No. 184.

### i.    C-5565 Judgment

TCPSP counterclaims for the unpaid balance of $362.00 due under the terms of the C-5565 judgment along with post-judgment interest pursuant to TFC Sections 304.004-304.007. ECF No. 184.  Additionally, TCPSP filed a proof of claim alleging the same set of facts as this counterclaim.  *See* Claim No. 1-1.  Montalvo has not objected to TCPSP's Claim No. 1-1.  As such, TCPSP's general unsecured Claim No. 1-1 is allowed in the amount of $362.00.

### ii.    Loan Assumption by Plaintiff

TCPSP counterclaims for $9,739.89, including reasonable attorneys' fees and costs of collection pursuant to the terms of the note and deed of trust for 505 Anderson.  ECF No. 184. Additionally, TCPSP filed a proof of claim regarding a similar set of facts based on 505 Anderson, which this Court allowed.  *See supra*; Claim No. 3-2.  The measure of damages in a suit on a note is the unpaid principal balance of the note, together with interest and attorneys' fees if provided for in the note.  *In re Arnette*, 454 B.R. 663, 692 (Bankr. N.D. Tex. June 7, 2011).  In addition, evidence of a note obligating a party to pay costs of collection is sufficient to warrant such costs.  *Cowhouse Dairy, Inc. v. Agristor Credit Corp.*, 566 S.W.2d 339, 341 (Tex. App.—Waco 1978, no pet.).  Montalvo assumed the 505 Anderson note and deed of trust on June 6, 2002 and TCPSP acquired the interest in the note and deed of trust on July 31, 2013. Claim No. 3-2, at Ex. 3.  The terms of the 505 Anderson note provided for an annual interest rate on unpaid principal of 13.50%, and an annual interest rate on matured, unpaid amounts of the highest rate allowed by law.  *Id.*, at Ex. 5.  The highest rate authorized by law for consumer loans

is 18%.  TEX. FIN. CODE ANN. § 303.009; *see also All Seasons Window and Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 498-99 (Tex. App.—Texarkana 2005, no pet.).  In cases of default, the note states that the transferee would be obligated to pay for costs of collection and reasonable attorneys' fees.  Claim No. 3-2, at Ex. 5.

However, a proof of claim seeking post-petition interest and fees will not suffice.  *In re Jack Kline Co., Inc.*, 440 B.R. 712, 732 (Bankr. S.D. Tex. Sept. 30, 2010).  A proof of claim may include only *pre-petition* claims.  *Id.* (emphasis added); *see also In re Endeavour Highrise L.P.*, 425 B.R. 402, 419 (Bankr. S.D. Tex. Mar. 12, 2010); *In re Pride Companies, L.P.*, 285 B.R. 366, 373 (Bankr. N.D. Tex. Sept. 30, 2002) (noting that a creditor's claim is calculated as of the date of the filing of the bankruptcy petition and does not include fees and other amounts arising post-petition).  TCPSP's Claim No. 3-2 included the total principal and interest Montalvo owed to TCPSP, which was allowed.  *See supra*; Claim No. 3-2.  TCPSP's proof of claim may not seek post-petition interest and fees.  *See In re Jack Kline Co., Inc.*, 440 B.R. at 732.  As such, TCPSP's counterclaim for reasonable attorneys' fees and costs of collection is denied.

   iii.   *Rents Collected*

TCPSP counterclaims for rents collected from tenants occupying the Mixon property sold at the execution sales without TCPSP's consent and exemplary damages pursuant to TCPRC Chapter 41.  ECF No. 184.  On September 9, 2015, TCPSP filed a civil action against the tenants occupying Mixon, seeking possession of Mixon which was lawfully bought through the execution sale.  ECF No. 184; *see also* Defs.' Ex. 25.  Summary judgment was rendered by County Court at Law No. 8 of Hidalgo County, Case No. CL-15-3059-H ("*CL-3059*") in favor of TCPSP and against the tenants residing in Mixon on February 18, 2016.  Defs.' Ex. 25.  Montalvo was not a party to the CL-3059 dispute.  *Id.*  TCPSP now brings this counterclaim

against Montalvo to collect alleged rent payments made by Mixon tenants to Montalvo. ECF No. 184. However, TCSP produced no evidence at trial that warrants such a finding. As such, TCSP's counterclaim for Mixon rental payments is denied.

     iv.   *Reasonable Attorneys' Fees and Case Expenses under C-7344*

TCPSP counterclaims for reasonable attorneys' fees and case expenses pursuant to TRCP 13, TCPRC Chapter 10, and FRCP 11, alleging Montalvo brought a groundless suit, in bad faith and for an improper purpose. ECF No. 184. The issue turns to whether TRCP 13, TCPRC Chapter 10, or FRCP 11 applies to an award of attorneys' fees. Under *Erie*, federal courts apply state substantive law to any issue or claim which has its source in state law and federal procedural law to the proceedings.[2] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938); *see also Camacho v. Texas Workforce Comm'n*, 445 F.3d 407, 409 (5th Cir. 2006). Where application of the state law directly conflicts with some statute, rule, or important federal policy, the state law is nonapplicable. *Exxon Corp. v. Burglin*, 42 F.3d 948, 950 (5th Cir. 1995). The bedrock federal policy regarding attorney's fees is the American Rule: parties are ordinarily required to bear their own attorney's fees, unless a statute or contract says otherwise. *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164, 192 L. Ed. 2d 208 (2015). State laws regarding attorney fees applies in federal courts only when it "embod[ies] a substantive policy." *Camacho*, 445 F.3d at 412. However, state laws providing for attorney fees due to bad-faith litigation tactics are procedural in nature. *Id*. Because TRCP 13 and TCPRC Chapter 10 are procedural and not substantive, they do not apply in this instant Adversary Proceeding. *See id*. As such, this Court denies this counterclaim.

     v.   *Reasonable Attorneys' Fees and Case Expenses under the Adversary Proceeding*

---

[2] While courts frequently and erroneously state that the *Erie* doctrine applies to federal courts sitting in diversity, the *Erie* case and the Supreme Court decisions that followed apply *Erie* to federal question cases as well. *See Camacho v. Texas Workforce Comm'n*, 445 F.3d 407, 412 n.1 (5th Cir. 2006).

TCPSP additionally counterclaims for reasonable attorneys' fees and expenses pursuant to FRCP 11 and TCPRC, Chapter 10, alleging that Montalvo brought a groundless suit, in bad faith, and for an improper purpose. ECF No. 184. As discussed *supra*, because TRCP 13 and TCPRC Chapter 10 are procedural and not substantive, they do not apply in this instant Adversary Proceeding. *See Camacho*, 445 F.3d at 412. On the other hand, Rule 11 of the Federal Rules of Civil Procedure, made applicable by Rule 9011 of the Federal Rules of Bankruptcy Procedure ("*FRBP*") authorizes this Court to impose sanctions for bad-faith litigation conduct, which may include an order directing payment of some or all of the reasonable attorney fees and other expenses incurred as a direct result of the violation. FRCP 11; FRBP 9011; *ASARCO LLC*, 135 S. Ct. at 2168. A finding of sanctions under Rule 9011 must begin with either a motion or on the court's own initiative; if thru a motion, it must be made separately from other motions or requests. FRBP 9011; *see Graham v. Barriger*, 699 F. Supp. 2d 612 (S.D.N.Y. Nov. 17, 2009); *Carofino v. Forester*, 450 F. Supp. 2d 257 (S.D.N.Y. Aug. 31, 2006). Because a Rule 9011 motion has not been brought, this Court will not *sua sponte* consider sanctions and will not impose reasonable attorneys' fees against Montalvo under Rule 9011. Therefore TCPSP's request for case expenses and reasonable attorney's fees is denied.

**5. Vela's Counterclaims and Damages**

Vela asserts that Montalvo is liable for: (1) the balance due and unpaid under terms of the C-095 judgment, together with post-judgment interest pursuant to TFC Sections 304.003-304.007; (2) the balance due and unpaid under the terms of the C-2559 judgment along with post-judgment interest pursuant to TFC Sections 304.003-304.007; (3) reasonable attorneys' fees and case expenses on account of Montalvo's C-7344 suit pursuant to TRCP 13 and TCPRC

Chapter 10; and (4) reasonable attorneys' fees and expenses on account of the Adversary Proceeding pursuant to FRCP 11 and TCPRC Chapter 10.  ECF No. 185.

     *i.*    *C-095 Judgment*

Vela counterclaims for the unpaid balance due of $39,966.15 plus 5% interest after February 26, 2016 under the terms of the C-095 judgment.  ECF No. 185.  Additionally, Vela filed a proof of claim alleging the same set of facts as this counterclaim, which this Court allowed.  *See supra*; Claim No. 2-2.  As such Vela's secured Claim No. 2-2 is allowed in the amount of $39,966.15 plus 5% interest per annum since February 26, 2016.

     *ii.*    *C-2559 Judgment*

Vela counterclaims for the unpaid balance of $2,431.29 plus $0.33 in daily interest after December 5, 2015 under the terms of the C-2559 judgment.  ECF No. 185.  Additionally, Vela filed a proof of claim alleging the same set of facts as this counterclaim.  Claim No. 15-1.  Montalvo has not objected to Vela's Claim No. 15-1.  As such, Vela's general unsecured Claim No. 15-1 is allowed in the amount of $2,431.29.

     *iii.*    *Reasonable Attorneys' Fees and Case Expenses under C-7344*

Vela counterclaims for reasonable attorneys' fees and case expenses pursuant to FRCP 11, TRCP 13, and TCPRC Chapter 10, alleging Montalvo brought a groundless suit, in bad faith, and for an improper purpose.  ECF No. 185.  As discussed *supra*, because TRCP 13 and TCPRC Chapter 10 are procedural and not substantive, they do not apply in this instant Adversary Proceeding.  *See Camacho*, 445 F.3d at 412.  As such, the Court denies this counterclaim.

     *iv.*    *Reasonable Attorneys' Fees and Case Expenses under the Adversary Proceeding*

Vela counterclaims for reasonable attorneys' fees and case expenses pursuant to FRCP 11 and TCPRC, Chapter 10, alleging that Montalvo brought a groundless suit, in bad faith, and for

an improper purpose.  ECF No. 185.  As discussed *supra*, Rule 9011 of the Federal Rules of Bankruptcy Procedure ("*FRBP*") authorizes this Court to impose sanctions for bad-faith litigation conduct, which may include an order directing payment of some or all of the reasonable attorney fees and other expenses incurred as a direct result of the violation.  FRCP 11; FRBP 9011; *ASARCO LLC*, 135 S. Ct. at 2168.  A finding of sanctions under Rule 9011 must begin with either a motion or on the court's own initiative; if thru a motion, it must be made separately from other motions or requests.  FRBP 9011; *see Graham v. Barriger*, 699 F. Supp. 2d 612 (S.D.N.Y. Nov. 17, 2009); *Carofino v. Forester*, 450 F. Supp. 2d 257 (S.D.N.Y. Aug. 31, 2006).  Because a Rule 9011 motion has not been brought, this Court will not *sua sponte* consider sanctions and will not impose reasonable attorneys' fees against Montalvo under Rule 9011.  Therefore the Court declines Vela's invitation to assess reasonable attorney's fees and case expenses against Montalvo.

## IV. CONCLUSION

Pending before this Court is Plaintiff's Fourth Amended Complaint along with Defendants' Counterclaims.  ECF Nos. 175, 184 & 185.  For the reasons stated above:

    a.  In Plaintiff's Fourth Amended Complaint, ECF No. 175,

        i.  Count I, Plaintiff's objections to TCPSP's Claim No. 3-2 is overruled, and TCPSP's general unsecured Claim No. 3-2 is allowed in the amount of $4,289.95;

        ii.  Count II, Plaintiff's objections to Vela's Claim No. 2-2 is overruled, and Vela's secured Claim No. 2-2 is allowed in the amount of $39,966.15 plus 5% interest per annum accruing since February 26, 2016, until paid;

        iii.  Counts III – VI are dismissed for lack of subject-matter jurisdiction under

the Rooker-Feldman doctrine;

b. In Defendant TCPSP's Second Amended Answer and Second Amended Counterclaims, ECF No. 184,

    i. As to Counterclaim 1, Montalvo has not objected to TCPSP's Claim No. 1-1. As such, TCPSP's general unsecured Claim No. 1-1 is allowed in the amount of $362.00;

    ii. As to Counterclaim 2, TCPSP may not file a proof of claim seeking post-petition interest and fees. Therefore, TCPSP's Counterclaim No. 2 is denied;

    iii. As to Counterclaim 3, TCSP produced no evidence at trial that warrants such a finding. Therefore, TCPSP's Counterclaim No. 3 is denied;

    iv. As to Counterclaim 4, Because TRCP 13 and TCPRC Chapter 10 are procedural and not substantive, they do not apply in this instant Adversary Proceeding. Therefore, TCPSP's Counterclaim No. 4 is denied;

    v. As to Counterclaim 5, because a Rule 9011 motion has not been brought, this Court will not *sua sponte* consider sanctions and will not impose reasonable attorneys' fees against Montalvo under Rule 9011. Therefore, TCPSP's Counterclaim No. 5 is denied.

c. In Defendant Vela's Second Amended Answer and Second Amended Counterclaims, ECF No. 185,

    i. As to Counterclaim 1, Vela filed Claim No. 2-2 alleging the same set of facts as this counterclaim, which this Court allowed. As such Vela's secured Claim No. 2-2 is allowed in the amount of $39,966.15 plus 5%

interest per annum since February 26, 2016, until paid;

ii.  As to Counterclaim 2, Vela filed a Claim No. 15-1 alleging the same set of facts as this counterclaim.  Montalvo has not objected to Vela's Claim No. 15-1.  As such, Vela's general unsecured Claim No. 15-1 is allowed in the amount of $2,431.29;

iii. As to Counterclaim 3, because TRCP 13 and TCPRC Chapter 10 are procedural and not substantive, they do not apply in this instant Adversary Proceeding.  Therefore, Vela's Counterclaim No. 3 is denied;

iv.  As to Counterclaim 4, because a Rule 9011 motion has not been brought, this Court will not *sua sponte* consider sanctions and will not impose reasonable attorneys' fees against Montalvo under Rule 9011.  Therefore, Vela's Counterclaim No. 4 is denied.

Signed: January 11, 2019

_____
Eduardo V. Rodriguez
United States Bankruptcy Judge